1  STUART F. DELERY
   Acting Assistant Attorney General
2  MAAME EWUSI-MENSAH FRIMPONG
   Deputy Assistant Attorney General
3  MICHAEL S. BLUME
   Director
4  LAUREN BELL
   Trial Attorney
5  United States Department of Justice
   Consumer Protection Branch
6  P.O. Box 386
   Washington, D.C. 20044
7  Tel. (202) 353-1991
   Fax: (202) 514-8742
8  Attorneys For the United States of America

9

10              UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
12  UNITED STATES OF AMERICA,        )
                                     )
13              Plaintiff,           )    No. 12-cv-1254 LB
                                     )
14        v.                         )
                                     )    **STIPULATION FOR ENTRY**
15  FUJINO ENTERPRISES, INC.,        )    **OF CONSENT DECREE AND**
    d/b/a BLUE OCEAN SMOKEHOUSE,     )    **WITHDRAWAL OF MOTION**
16  a corporation, and ERIKO         )    **FOR ENTRY OF DEFAULT JUDGMENT**
    FUJINO, an individual,           )
17                                   )
                Defendants.          )
18  _____)

19  **STIPULATION FOR ENTRY OF CONSENT DECREE AND WITHDRAWAL OF MOTION**

20              **FOR ENTRY OF DEFAULT JUDGMENT**

21

22        Plaintiff, the United States of America, and Defendants

23  Fujino Enterprises, Inc., d/b/a Blue Ocean Smokehouse, and Eriko

24  Fujino, through their undersigned counsel, hereby respectfully

25  request that the Court withdraw Plaintiff's Motion for Entry of

26  Default (Dkt. 10) and enter as a Final Order the attached

27  Proposed Order of Consent Decree of Permanent Injunction that is

28  signed by both parties.

          IT IS SO STIPULATED.

    Stipulation to Enter Consent Decree; [Proposed] Order - 12-cv-
    1254 LB

1

2

3

4

5                                     Respectfully submitted,

6       STUART F. DELERY
        Acting Assistant Attorney General

7       MAAME EWUSI-MENSAH FRIMPONG
        Acting Deputy Assistant Attorney
8       General

9       MICHAEL S. BLUME
        Director

10

11      Dated: August 28, 2012          By: /s/ Lauren Bell
        LAUREN BELL
12      Trial Attorney
        Consumer Protection Branch
13      Civil Division
        Department of Justice
14      P.O. Box 386
        Washington, DC 20044
15      Tel. (202) 353-1991
        Fax  (202) 514-8742
16      Lauren.Hash.Bell@usdoj.gov

17      Of Counsel:
        WILLIAM B. SCHULTZ
18      Acting General Counsel

19      ELIZABETH H. DICKINSON
        Chief Counsel
20      Food and Drug Division

21      ERIC M. BLUMBERG
        Deputy Chief Counsel, Litigation

22

23      MELISSA J. MENDOZA
        Associate Chief Counsel
24      United States Department of
        Health and Human Services
25      Office of the General Counsel
        10903 New Hampshire Avenue
26      Silver Spring, MD 20993-0002
        Tel. (301) 796-8707

27      Attorneys for the United States

28

Stipulation to Enter Consent Decree; [Proposed] Order - 12-cv-
1254 LB                        -2-

Dated: August 28, 2012

By:/s/ _Terence Isobe_
Terence Isobe
Law Office of Terence W. Isobe
616 Moraga Street, Suite 4
San Francisco, CA 94122
(415) 731-7921

Attorney for Fujino Enterprises
Inc., and Eriko Fujino

STUART F. DELERY
Acting Assistant Attorney General
MAAME EWUSI-MENSAH FRIMPONG
Deputy Assistant Attorney General
MICHAEL S. BLUME
Director
LAUREN H. BELL
Trial Attorney
United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, D.C. 20044
Tel. (202) 353-1991
Fax: (202) 514-8742
Attorneys For Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>FUJINO ENTERPRISES, INC., )<br>d/b/a BLUE OCEAN SMOKEHOUSE, )<br>a corporation, and ERIKO )<br>FUJINO, an individual, )<br><br>Defendants. ) | Civil No. _____<br><br>CONSENT DECREE OF PERMANENT<br>INJUNCTION |

Plaintiff, the United States of America, by its undersigned

attorneys, having filed a Complaint For Permanent Injunction

("Complaint") against Fujino Enterprises, Inc., doing business

as Blue Ocean Smokehouse, a corporation, and Eriko Fujino, an

individual (collectively, "Defendants"), and Defendants having

appeared and having consented to the entry of this Consent

Decree of Permanent Injunction ("Decree") without contest and

before any testimony has been taken, and the United States of

America having consented to this Decree;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1      1.  This Court has jurisdiction over the subject matter and

2 over all parties to this action.

3      2.  The Complaint states a cause of action against

4 Defendants under the Federal Food, Drug, and Cosmetic Act,

5 21 U.S.C. § 301 *et seq.* (the "Act").

6      3.  Defendants violate the Act, 21 U.S.C. § 331(k), by

7 causing articles of food, within the meaning of 21 U.S.C.

8 § 321(f), to become adulterated within the meaning of 21 U.S.C.

9 § 342(a)(4), in that they have been prepared, packed, or held

10 under insanitary conditions whereby they may have been rendered

11 injurious to health, while such articles are held for sale after

12 shipment in interstate commerce.

13      4.  Upon entry of this Decree, Defendants represent to the

14 Court that Defendants are not directly or indirectly engaged in

15 receiving, preparing, processing, packing, labeling, holding,

16 and/or distributing any articles of food.  If Defendants later

17 intend to resume any such food operations, other than the types

18 described in paragraph 8 of this Decree, at 205 Yale Avenue,

19 Half Moon Bay, California, or any other location, Defendants

20 must first notify FDA in writing at least ninety (90) calendar

21 days in advance of resuming operations and comply with paragraph

22 5(A)-(C) and 5(E)-(I) of this Decree.  This notice shall

23 identify the type(s) of food Defendants intend to receive,

24 prepare, process, pack, label, hold, and/or distribute, and the

25 facility in which Defendants intend to resume operations.

26 Defendants shall not resume operations until FDA has first

27 inspected Defendants' facility and operations pursuant to

28 paragraph 5(H), Defendants have paid the costs of such

1  inspection(s) pursuant to paragraph 12, and Defendants have
2  received written notice from FDA, as required by paragraph 5(J),
3  and then shall resume such food operations only to the extent
4  authorized in FDA's written notice.

5     5.  Defendants and each and all of their agents,
6  representatives, employees, attorneys, successors, assigns, and
7  any and all persons in active concert or participation with any
8  of them (including individuals, directors, corporations,
9  subsidiaries, affiliates, and partnerships) who receive actual
10 notice of this Decree are hereby permanently restrained and
11 enjoined, under the provisions of 21 U.S.C. § 332(a), and the
12 equitable authority of this Court, from directly or indirectly
13 receiving, preparing, processing, packing, labeling, holding,
14 and/or distributing articles of food, at or from 205 Yale
15 Avenue, Half Moon Bay, California ("the facility"), or at or
16 from any other locations at which Defendants, now or in the
17 future, directly or indirectly receive, prepare, process, pack,
18 label, hold, and/or distribute articles of food, unless and
19 until:

20    A.  Defendants thoroughly clean, sanitize, renovate, and
21 render the facility and all equipment contained therein suitable
22 for use in receiving, preparing, processing, packing, holding,
23 and distributing articles of food, and institute procedures to
24 ensure that the facility and equipment therein continuously are
25 maintained in such condition;

26    B.  Defendants retain, at their expense, a person or
27 persons ("expert") who is without any personal or financial ties
28 (other than the retention agreement) to Defendants or their

- 3 -

1  families, and who, by reason of background, education, training,
2  and experience, is qualified to:

3      1.  Ensure that Defendants comply with the Act, the
4  seafood Hazard Analysis Critical Control Point ("HACCP")
5  regulations, 21 C.F.R. Part 123, and the current good
6  manufacturing practice ("cGMP") requirements for food, 21 C.F.R.
7  Part 110.  The expert's seafood HACCP qualifications shall
8  include, but not be limited to, developing procedures for
9  smoking fish to achieve water phase salt levels that adequately
10 control C. botulinum ("C. bot.");

11     2.  Establish an environmental monitoring program
12 for the genus Listeria ("L. spp.");

13     3.  Develop and conduct employee training programs
14 on environmental monitoring for L. spp., and on complying with
15 this Decree, the Act, and 21 C.F.R. Parts 123 and 110; and

16     4.  Inspect the facility and establish procedures to
17 ensure that the methods, facilities, and controls are
18 continuously operated and administered in conformity with this
19 Decree, the Act, and 21 C.F.R. Parts 123 and 110.

20   Defendants shall notify the United States Food and Drug
21 Administration ("FDA") in writing of the name and qualifications
22 of the expert under paragraph 5(B) within five (5) calendar days
23 of retaining such expert;

24     C.  After reviewing all FDA inspectional observation
25 forms ("Form FDA 483s") issued to Defendants at the conclusion
26 of FDA inspections from July 2010 to present and all
27 deficiencies documented by the California Department of Public
28

-4-

1   Health since February 2010, the expert has, in conjunction with
2   Defendants:
3          1.  Developed and implemented, to FDA's
4   satisfaction, an effective program ("Listeria Monitoring
5   Program") for monitoring and testing, at appropriate
6   frequencies, food-contact surfaces, equipment, and other
7   environmental sites where fish is received, prepared, processed,
8   packed, held, and distributed, up to and including final
9   packaging, and common areas that could be reservoirs for cross-
10  contamination, to ensure that the genus L. spp. is controlled
11  within the facility and that Listeria monocytogenes ("L. mono")
12  does not occur in the finished product.  Environmental testing
13  shall be performed by a qualified, independent laboratory in
14  accordance with timetables submitted to and approved in writing
15  by FDA before testing begins.  Defendants further shall ensure
16  that all results of testing conducted pursuant to this paragraph
17  are provided to FDA within two (2) calendar days after receipt
18  by Defendants.  The Listeria Monitoring Program must include a
19  plan for remedial action should L. spp. be detected.  When a
20  sample analysis shows the presence of L. spp. on a food-contact
21  surface, Defendants shall, at a minimum, thoroughly clean and
22  sanitize the facility and equipment and analyze for L. mono all
23  finished product produced since the last negative L. spp.
24  analysis;
25         2.  Conducted hazard analyses for each type of fish
26  and fishery product that Defendants intend to process, in
27  accordance with 21 C.F.R. § 123.6(a);
28

- 5 -

3.   Developed, to FDA's satisfaction, adequate written HACCP plans and associated records, including, but not limited to, all monitoring records required under 21 C.F.R. § 123.6(c)(7).   The HACCP plans shall effectively control food safety hazards reasonably likely to occur for each type of fish and fishery product that Defendants intend to process, in accordance with 21 C.F.R. Part 123, including, but not limited to, the formation of toxin by C. bot. in smoked fish and fishery products and scombrotoxin in tuna and other susceptible fish;

4.   Completed scientific verification studies of the adequacy of critical limits (i.e., the minimum and maximum values of the process) listed in all Defendants' HACCP plans and made changes to the HACCP plans necessitated by the results of the verification studies.   The verification studies for vacuum-packaged, smoked fish and fishery products shall, at a minimum, confirm:

i.   That the critical limits established for vacuum-packaged, hot smoked fish and fishery products are sufficient to consistently achieve a water phase salt level of 3.5% or higher in combination with smoking at 145°F for at least thirty (30) minutes; and

ii.   That the critical limits established for vacuum-packaged, cold smoked fish and fishery products are sufficient to consistently achieve a water phase salt level of 3.5% or higher in combination with smoking at temperatures no higher than 90°F;

5.   Developed, to FDA's satisfaction, adequate written Standard Sanitation Operating Procedures ("SSOPs") in

- 6 -

accordance with 21 C.F.R. § 123.11 that, at a minimum, ensure on an ongoing basis that Defendants' facility and all equipment contained therein are clean, sanitized, and suitable for receiving, preparing, processing, packing, holding, and distributing articles of food, and that Defendants' operations comply with the Act and 21 C.F.R. Part 110;

6. Established and conducted employee training programs that include, at a minimum, instruction on implementing the Listeria Monitoring Program, written HACCP plans and all associated records (including monitoring records), verification studies, and SSOPs developed pursuant to paragraphs 5(C)(1)-(5) and approved by FDA pursuant to paragraph 5(D);

7. Submitted to FDA the Listeria Monitoring Program, written HACCP plans and all associated records (including monitoring records), verification studies, and SSOPs developed pursuant to paragraphs 5(C)(1)-(5), and documentation demonstrating that the expert has trained Defendants and each of their employees, as described in paragraph 5(C)(7);

8. Inspected the facility and the methods and controls Defendants use to receive, prepare, process, pack, label, hold, and distribute articles of food to determine whether Defendants are fully prepared to operate in compliance with this Decree, the Act, and 21 C.F.R. Parts 123 and 110. The expert shall submit all findings, in writing, to Defendants and FDA concurrently, within ten (10) calendar days of completion of the inspection(s); and

9. Certified in writing to FDA that Defendants' facility and the methods and controls Defendants use to receive

- 7 -

1   prepare, process, pack, label, hold, and distribute articles of

2   food are in compliance with the requirements of this Decree, the

3   Act, and 21 C.F.R. Parts 123 and 110;

4       D.   FDA has approved, in writing, the Listeria

5   Monitoring Program, written HACCP plans and all associated

6   records (including monitoring records), verification studies,

7   and SSOPs developed pursuant to paragraphs 5(C)(1)-(5);

8       E.   Defendants assign the responsibility for

9   implementing and monitoring the FDA-approved HACCP plans to an

10  individual who has been trained by the expert in the application

11  of HACCP principles to Defendants' fish and fishery product

12  processing;

13      F.   Within thirty (30) calendar days after entry of

14  this Decree, Defendants shall destroy, under FDA's supervision

15  and pursuant to a destruction plan approved in writing by FDA,

16  all fish and fishery products currently in Defendants' custody,

17  control, and/or possession;

18      G.   Defendants report to FDA, in writing, the actions

19  they have taken to bring their operations into compliance with

20  this Decree, the Act, and all applicable regulations, including

21  the specific measures Defendants have taken to address each of

22  the deficiencies documented by FDA and the California Department

23  of Public Health since February 2010;

24      H.   FDA, as and when it deems necessary to evaluate

25  Defendants' compliance with the terms of this Decree, the Act,

26  and applicable regulations, conducts inspections of the

27  facility, including the buildings, equipment, utensils, articles

28  of food, and all relevant records contained therein;

- 8 -

I.  Defendants have paid all costs of supervision, inspections, investigations, analyses, examinations, and reviews for FDA's oversight with respect to paragraph 5, at the rates set forth in paragraph 12 below; and

J.  FDA has notified Defendants, in writing, that Defendants appear to be in compliance with all the requirements specified in paragraphs 5(A)-(C), (E)-(G), and (I) of this Decree, the Act, and 21 C.F.R. Parts 123 and 110.

6.  Immediately upon resuming operations after completing the requirements set forth in paragraph 5, Defendants shall, in consultation with the expert, continuously implement the Listeria Monitoring Program, written HACCP plans and all associated records (including monitoring records), verification studies, and SSOPs developed pursuant to paragraphs 5(C)(1)-(5) and approved by FDA pursuant to paragraph 5(D).  Defendants further shall comply with the following requirements:

A.  Defendants shall have tested a randomly collected, representative sample from every lot of vacuum-packaged, smoked fish product that they process for the first five (5) consecutive production days, and all such samples shall have a water phase salt level that adheres to the critical limits set forth in paragraphs 5(C)(4)(i)-(ii) (hereinafter, "successful compliance");

B.  After successful compliance with subparagraph (A) of this paragraph, Defendants shall have tested a randomly collected, representative sample from one lot of each type of vacuum-packaged, smoked fish product that they process for the next twenty (20) consecutive production days;

- 9 -

Consent Decree of Permanent Injunction; 12-cv-1254 LB

C.  After successful compliance with subparagraph (B) of this paragraph, Defendants shall have tested a randomly collected, representative sample from one lot of each type of vacuum-packaged, smoked fish product that they process for each week for the next three (3) months;

D.  After successful compliance with subparagraph (C) of this paragraph, Defendants shall have tested a randomly collected, representative sample from one lot of each type of vacuum-packaged, smoked fish product that they process every three (3) months; and

E.  Defendants shall send copies of the results of tests conducted pursuant to subparagraphs (A)-(D) of this paragraph to FDA within two (2) calendar days after receipt by Defendants.

If any sample analysis conducted pursuant to subparagraphs (A)-(D) of this paragraph shows a water phase salt level that does not adhere to the critical limits set forth in paragraphs 5(C)(4)(i)-(ii), Defendants must start the complete sequence of testing under subparagraphs (A)-(D) of this paragraph again and shall immediately destroy or recondition the lot(s) under FDA's supervision and pursuant to a destruction or reconditioning plan approved in writing by FDA.  Defendants further shall reassess their processing operations to determine the cause of the deviation from the critical limits for water phase salt and revise their HACCP plans accordingly.

7.  Within thirty (30) calendar days of Defendants' resumption of operations after completing the requirements set forth in paragraph 5, the expert shall conduct a comprehensive inspection of the facility and the methods and controls used to

-10-

Consent Decree of Permanent Injunction; 12-cv-1254 LB

1   receive, prepare, process, pack, label, hold, and distribute

2   articles of food to determine whether Defendants are operating

3   in compliance with this Decree, the Act, and all applicable

4   regulations.  The expert shall submit a report documenting all

5   findings to Defendants and FDA concurrently, within ten (10)

6   calendar days after completing the inspection.  Thereafter, the

7   expert shall conduct inspections every ninety (90) calendar days

8   for one year, and then every one hundred eighty calendar days

9   (180) for the next two years.  Beginning in the fourth year

10  after the date this Decree is entered, the expert shall conduct

11  inspections annually, unless FDA informs Defendants in writing

12  that more frequent expert inspections and reporting are

13  required.  During each inspection conducted by the expert, the

14  expert shall verify that Defendants' facility and the methods

15  and controls Defendants use to receive, prepare, process, pack,

16  label, hold, and distribute articles of food are in compliance

17  with the requirements of this Decree, the Act, and 21 C.F.R.

18  Parts 123 and 110, and shall certify such in the expert's report

19  submitted to Defendants and FDA concurrently as described in

20  this paragraph.

21      8.    The injunctive provisions set forth in paragraph 5

22  shall not prohibit Defendants from harvesting or transporting

23  fish or fishery products, provided that Defendants do not

24  otherwise engage in processing, as defined by 21 C.F.R.

25  § 123.3(k)(1), or from practices such as heading, eviscerating,

26  or freezing intended solely to prepare fish for holding on board

27  a harvest vessel, within the meaning of 21 C.F.R.

28  § 123.3(k)(2)(i)-(ii).

- 11 -

Consent Decree of Permanent Injunction; 12-cv-1254 LB

9.    Defendants and each and all of their agents, representatives, employees, attorneys, successors, assigns, and any and all persons in active concert or participation with any of them (including individuals, directors, corporations, subsidiaries, affiliates, and partnerships) who receive actual notice of this Decree, are permanently restrained and enjoined under the provisions of 21 U.S.C. § 332(a) from directly or indirectly doing or causing any act that:

A.    violates the Act, 21 U.S.C. § 331(a), by introducing or delivering for introduction into interstate commerce, and/or causing the introduction or delivery for introduction into interstate commerce, any article of food, within the meaning of 21 U.S.C. § 321(f), that is adulterated, within the meaning of 21 U.S.C. § 342;

B.    violates the Act, 21 U.S.C. § 331(k), by causing any article of food to become adulterated within the meaning of 21 U.S.C. 342, while such article is held for sale after shipment in interstate commerce; and/or

C.    results in the failure to implement and continuously maintain the requirements of this Decree.

10.   FDA shall be permitted, without prior notice and as and when FDA deems necessary, to make inspections of Defendants' operations, and, without prior notice, to take any other measures necessary to monitor and ensure continuous compliance with the terms of this Decree, the Act, and all applicable regulations.  During the inspections, FDA shall be permitted to have immediate access to buildings, equipment, raw ingredients, in-process and finished articles of food, containers, and

- 12 -

1   packaging material therein; to take photographs and make video

2   recordings; to take samples of raw ingredients, in-process, and

3   finished articles of food, containers, and packaging material;

4   and to examine and copy all records related to receiving,

5   preparing, processing, packing, labeling, holding, and

6   distributing any and all articles of food.  The inspections

7   shall be permitted upon presentation of a copy of this Decree

8   and appropriate credentials.  The inspection authority granted

9   by this Decree is apart from, and in addition to, the authority

10  to make inspections under the Act, 21 U.S.C. § 374.

11      11.  Defendants shall promptly provide any information or

12  records to FDA upon request regarding the receiving, preparing,

13  processing, packing, labeling, holding, and distributing of

14  articles of food.  Defendants shall maintain copies of their

15  HACCP plans, and all records required by their HACCP plans, 21

16  C.F.R. Parts 110 and 123, and this Decree, at the facility in a

17  location where they are readily available for reference and

18  inspection by FDA.  All records required to be kept by the HACCP

19  plans, regulations, and this Decree shall be retained for at

20  least three (3) years after the date they are prepared and shall

21  be presented immediately to FDA investigators upon request.

22      12.  Defendants shall pay all costs of FDA's supervision,

23  inspections, investigations, sampling, testing, analyses,

24  examinations, reviews, and document preparation that FDA deems

25  necessary to evaluate Defendants' compliance with this Decree,

26  at the standard rates prevailing at the time the costs are

27  incurred, and Defendants shall make payment in full to FDA

28  within thirty (30) calendar days of receiving written

- 13 -

notification from FDA of the costs.  As of the date that this
Decree is signed by the parties, these rates are:  $87.57 per
hour and fraction thereof per representative for inspection
work; $104.96 per hour or fraction thereof per representative
for analytical or review work; $0.555 per mile for travel by
automobile; government rate or the equivalent for travel by air
or other means; and the published government per diem rate or the
equivalent for the areas in which the inspections are performed
per representative and per day for subsistence expenses, where
necessary.  In the event that the standard rates applicable to
FDA supervision of court-ordered compliance are modified, these
rates shall be increased or decreased without further order of
the Court.

    13.  If, at any time after entry of this Decree, FDA
determines, based on the results of an inspection, a report
submitted by the expert, an analysis of a sample(s), or other
information, that, at the facility or any other locations at
which Defendants, now or in the future, directly or indirectly
receive, prepare, process, pack, label, hold, and/or distribute
articles of food, Defendants have failed to comply with any
provision of this Decree, have violated the Act or applicable
regulations, or that additional corrective actions are necessary
to achieve compliance with this Decree, the Act, or applicable
regulations, FDA may, as and when it deems necessary, order
Defendants in writing to take appropriate action, including, but
not limited to, ordering Defendants immediately to take one or
more of the following actions:

-14-

A.  Cease receiving, preparing, processing, packing, labeling, holding, and/or distributing articles of food;

B.  Recall all articles of food that have been distributed or are under the custody and control of Defendants' agents, distributors, customers, or consumers;

C.  Institute or re-implement any of the requirements set forth in this Decree; and/or

D.  Take any other corrective actions as FDA deems necessary to protect the public health and/or bring Defendants into compliance with this Decree, the Act, and all applicable regulations.

Defendants shall pay all costs of recalls and other corrective actions, including the costs of FDA's supervision, inspections, investigations, analyses, examinations, review, travel, and subsistence expenses to implement and monitor recalls and other corrective actions, at the rates specified in paragraph 12.  This provision shall be separate and apart from, and in addition to, all other remedies available to FDA.

14.  Any cessation of operations or other corrective actions as described in paragraph 13 shall be implemented immediately and continue until Defendants receive written notification from FDA that Defendants appear to be in compliance with this Decree, the Act, and all applicable regulations.

15.  Within ten (10) calendar days of the date of Defendants' notice to FDA as described in paragraph 4, Defendants shall post a copy of this Decree in a conspicuous location in the employee common areas at the facility and at any other locations at which Defendants receive, prepare, process,

- 15 -

1  pack, label, hold, and/or distribute articles of food, and shall

2  ensure that the Decree remains posted for a period of at least

3  twelve (12) months.

4      16.  Within ten (10) calendar days of the entry of this

5  Decree, Defendants shall hold a general meeting or series of

6  smaller meetings for all employees, at which they shall describe

7  the terms and obligations of this Decree.

8      17.  Within fifteen (15) calendar days after the entry of

9  this Decree, Defendants shall provide a copy of the Decree, by

10  personal service or by certified mail (restricted delivery,

11  return receipt requested), to each and all of Defendants'

12  agents, representatives, employees, attorneys, successors,

13  assigns, and any and all persons in active concert or

14  participation with any of them (including individuals,

15  directors, corporations, subsidiaries, affiliates, and

16  partnerships).  Within thirty (30) calendar days after the entry

17  of this Decree, Defendants shall provide the FDA San Francisco

18  District Director, at the address set forth in paragraph 20, and

19  plaintiff's attorneys, an affidavit, from a person with personal

20  knowledge of the facts stated therein, stating the fact and

21  manner of Defendants' compliance with this paragraph and

22  identifying the names and positions of all persons so notified.

23      18.  In the event that any Defendant becomes associated

24  with any additional agents, representatives, employees,

25  attorneys, successors, assigns, or any additional persons in

26  active concert or participation with any of them (including

27  individuals, directors, corporations, subsidiaries, affiliates,

28

- 16 -

and partnerships) at any time after entry of this Decree,
Defendants shall provide a copy of this Decree, by personal
service or certified mail (restricted delivery, return receipt
requested) to such persons.  Within ten (10) calendar days of
each instance that any Defendant becomes associated with any
such additional persons, Defendants shall provide to FDA an
affidavit stating the fact and manner of Defendants' compliance
with this paragraph, identifying the names, addresses, and
positions of all person who received a copy of this Decree
pursuant to this paragraph, and attaching a copy of the executed
certified mail return receipts.  Within ten (10) calendar days
of receiving a request from FDA for any information or
documentation that FDA deems necessary to evaluate Defendants'
compliance with this paragraph, Defendants shall provide such
information or documentation to FDA.

19.   Defendants shall notify the FDA San Francisco District
Director, in writing, at the address set forth in paragraph 20,
at least twenty (20) calendar days before any change in
ownership, name, or character of their business, including
reorganization, relocation, dissolution, assignment, bankruptcy,
resulting in emergence of a successor corporation, the creation
or dissolution of subsidiaries, or any other change in the
corporate structure of Fujino Enterprises, Inc., doing business
as Blue Ocean Smokehouse, or the lease, sale, or assignment of
any business assets, such as buildings, equipment, or inventory,
that may affect compliance with this Decree.  Defendants shall
provide any prospective successor or assign a copy of this

- 17 -

1  Decree at least ten (10) calendar days before the assignment or
2  change in business, and shall furnish FDA with an affidavit of
3  compliance with this paragraph no later than ten (10) calendar
4  days prior to such assignment or change in business.

5      20.  All notifications, correspondence, and communications
6  to FDA required by the terms of this Decree shall be submitted
7  to the Director, FDA San Francisco District Office, 1431 Harbor
8  Bay Parkway, Alameda, CA 94502, and shall reference this civil
9  action by case name and civil action number.

10     21.  If any Defendant fails to comply with any of the
11 provisions of this Decree, the Act, and/or applicable
12 regulations, then Defendants shall pay to the United States of
13 America the sum of five thousand dollars ($5,000) in liquidated
14 damages for each day such violation continues and an additional
15 sum of five thousand dollars ($5,000) in liquidated damages for
16 each violation of this Decree, the Act, and/or applicable
17 regulations (e.g., if two violations occur for two business
18 days, the liquidated damages shall be $20,000), and an
19 additional sum equal to twice the retail value of each shipment
20 of an adulterated article of food in liquidated damages for each
21 such unlawful shipment.  Defendants understand and agree that
22 the liquidated damages specified in this paragraph are not
23 punitive in nature and their imposition does not in any way
24 limit the ability of the United States to seek, or the Court to
25 impose, additional civil or criminal penalties to be paid by
26 Defendants, or remedies based on conduct that may also be the

27
28

- 18 -

1   basis for payment of liquidated damages pursuant to this

2   paragraph.

3       22.   Should the United States bring, and prevail in, a

4   contempt action to enforce the terms of this Decree, Defendants

5   shall, in addition to other remedies, reimburse the United

6   States for its attorneys' fees (including overhead), travel

7   expenses incurred by attorneys and witnesses, expert witness

8   fees, administrative and court costs, investigation and

9   analytical expenses incurred in bringing the contempt action,

10  and any other costs or fees related to the contempt proceedings.

11      23.   All decisions specified in this Decree shall be vested

12  in the discretion of FDA.   FDA's decisions shall be final and,

13  to the extent that these decisions are subject to review, shall

14  be reviewed by the Court under the arbitrary and capricious

15  standard set forth in 5 U.S.C. § 706(2)(A).   Review by the Court

16  of any FDA decision rendered pursuant to this Decree shall be

17  based exclusively on the written record before FDA at the time

18  the decision was made.   No discovery shall be taken by either

19  party.

- 19 -

24.   This Court shall retain jurisdiction of this action and the parties hereto for the purpose of enforcing and modifying this Decree and for the purpose of granting such additional relief as may be necessary and appropriate.

SO ORDERED:

Dated this _____ day of _____, 2012.


_____
LAUREL BEELER
United States Magistrate Judge

- 20 -

Consent Decree of Permanent Injunction; 12-cv-1254 LB

We hereby consent to the entry of the foregoing Decree:

FOR DEFENDANTS

ERIKO FUJINO
Individually and as President
of Fujino Enterprises, Inc.,
d/b/a Blue Ocean Smokehouse.

TERENCE W. ISOBE
Attorney for Fujino
Enterprises, Inc., d/b/a Blue
Ocean Smokehouse, and
Eriko Fujino

FOR PLAINTIFF

STUART F. DELERY
Acting Assistant Attorney
    General

MAAME EWUSI-MENSAH FRIMPONG
Acting Deputy Assistant
    Attorney General

MICHAEL S. BLUME
Director

By: LAUREN H. BELL
LAUREN H. BELL
Trial Attorney
Consumer Protection Branch
Civil Division
Department of Justice
P.O. Box 386
Washington, DC 20044
Tel. (202) 307-0053
Fax  (202) 514-8742
Lauren.Hash.Bell@usdoj.gov

Of Counsel:

WILLIAM B. SCHULTZ
Acting General Counsel

ELIZABETH H. DICKINSON
Chief Counsel
Food and Drug Division

ERIC M. BLUMBERG
Deputy Chief Counsel,
Litigation

MELISSA J. MENDOZA
Associate Chief Counsel
United States Department of
    Health and Human Services
Office of the General Counsel
10903 New Hampshire Avenue
Silver Spring, MD 20993-0002
Tel. (301) 796-8707

- 21 -